**SIGNED this 13 day of February, 2015.**



*Austin E. Carter*
**Austin E. Carter
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 14-11752-AEC |
| Mary A. Paul, | ) | |
| | ) | Chapter 13 |
|    Debtor. | ) | |
| | ) | |
| Mary A. Paul, | ) | |
| | ) | |
|    Movant, | ) | |
| | ) | |
| v. | ) | Contested Matter |
| | ) | |
| South Georgia Title Pawn, | ) | |
| | ) | |
|    Respondent. | ) | |

Before

Austin E. Carter
United States Bankruptcy Judge

Counsel

   For Debtor/Movant:                      Wayne Gilleland
                                                          P.O. Box 104
                                                          Macon, Georgia 31202

   For Respondent:                           Daniel Wilder
                                                          544 Mulberry Street, Suite 800
                                                          Macon, Georgia 31201

## MEMORANDUM OPINION

This contested matter comes before the Court on the Debtor's Emergency Motion for Turnover of Property, filed on January 20, 2015. In this Motion, the Debtor seeks the turnover of a 2001 Mitsubishi Montero (the "Vehicle"), which was repossessed from her by the Respondent prior to the filing of this case. The Court heard this matter on an expedited basis on February 3, 2015.

Proceedings regarding the turnover of property of the estate are core proceedings under 28 U.S.C. § 157(b). The Court states its findings of fact and conclusions of law separately pursuant to Federal Rule of Civil Procedure 52, made applicable in this case by Federal Rule of Bankruptcy Procedure 7052, which is, in turn, made applicable to this contested matter through Federal Rule of Bankruptcy Procedure 9014(c).

## FINDINGS OF FACT

The parties have stipulated to the following facts, which the Court adopts as its findings:

- Prior to the filing of this case, the Debtor entered into a pawn transaction with Respondent South Georgia Title Pawn ("South Georgia"), whereunder she pawned the title to her Vehicle in exchange for an advance of funds.

- This transaction should be considered a "true" pawn transaction under Georgia law.

- That, pursuant to the pawn transaction, the Debtor had no obligation to repay the money advanced, redeem the Vehicle, or repurchase the Vehicle at a stipulated price.

- The Debtor's pawn transaction with South Georgia matured on November 26, 2014.

- Pursuant to O.C.G.A. § 44-14-403(b)(1), the Debtor had thirty days from such maturity date to redeem the vehicle by paying off in full the remaining balance of any principal, interest, and pawnshop charges outstanding with South Georgia, this period ending Friday, December 26, 2014.

- South Georgia repossessed the vehicle on December 4, 2014.

- On December 10, 2014, the Debtor filed this bankruptcy case.

- The sixty day extension from the date of filing bankruptcy provided by § 108(b) of the Bankruptcy Code[1] calculates to Sunday, February 8, 2015; thus, the maturity period as extended under Federal Rule of Bankruptcy Procedure 9006(a)(1)(c) ends Monday, February 9, 2015.

- The Debtor filed her Motion seeking an order compelling South Georgia to surrender the Vehicle to her on January 20, 2015.

- The Debtor concedes that she does not have the ability to redeem the Vehicle by paying the full amount of her obligation to South Georgia. (Instead, the Debtor proposes in her Chapter 13 plan (which has not yet come on for a confirmation hearing) to treat South Georgia as the holder of a secured claim in the amount of the balance owed under the pawn transaction.)

### Conclusions of Law

Under the Georgia Code, when a person pawns her vehicle, the loan she receives becomes due in full in thirty days from the date of the transaction unless the transaction is mutually extended for another thirty-day period. O.C.G.A. § 44-14-403(b). Upon such maturity, the borrower may "redeem" her vehicle by paying the full amount of principal, interest, and pawnshop charges owing under the pawn loan transaction. *Id.* § 44-14-403(b)(3). This thirty-day period may be referred to as the "redemption period."

Section 108(b) operates to extend any period to "cure a default, or perform any other similar act" under applicable nonbankruptcy law to up to sixty days from the date of the order of relief (which in a voluntary case is entered upon the filing of the petition in bankruptcy under § 301(b)). *See* 11 U.S.C. § 108(b). Thus, filing a bankruptcy petition during the thirty-day redemption period provided under Georgia law causes an extension of that redemption period, such extension ending sixty days from the petition date. *In re Moore*, 448 B.R. 93, 102 (Bankr. N.D. Ga. 2011) (collecting cases).

The analysis of a motion for turnover of property usually begins with the question of whether the property interest in question is property of the estate. *See* 5 Collier on Bankruptcy ¶ 542.02[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). However, the parties agreed

---

[1] Unless otherwise indicated, all references herein to "section" or "§" refer to a corresponding section of the Bankruptcy Code, and all references to the "Bankruptcy Code" relate to the corresponding sections of Title 11 of the United States Code.

that the Court's decision on the motion should not turn on the extent to which the Vehicle is *currently* property of the estate, but instead whether the Vehicle will continue to be property of the estate and remain in possession of the Debtor *over the course of the plan* (such as would be the case if the Vehicle were the subject of a typical secured transaction outside of the pawn context). The Debtor contends that § 1322 allows her to redeem the Vehicle from South Georgia by treating South Georgia as the holder of a secured claim under her plan. South Georgia, on the other hand, argues that once the Debtor's right to redeem the Vehicle under the thirty-day redemption period provided for by Georgia law, as extended under § 108(b), expires, neither the Debtor nor her estate has any further rights to the Vehicle, and, therefore, South Georgia cannot be treated as holding a secured claim under the Debtor's plan. In support of its argument, South Georgia cites *In re Oglesby*, No. 01-4072, 2001 WL 34047880 (Bankr. S.D. Ga. Oct. 23, 2001).

Although the Debtor's counsel did not cite to any specific subsection of § 1322 in support of his argument that § 1322 allows the Debtor to redeem the Vehicle over the life of the plan, he did argue that § 1322 allows a debtor to cure defaults through a plan. This subsection, of course, is § 1322(b)(3). The Court's review of § 1322 and applicable case law reveals an additional subsection that arguably supports the Debtor's position, namely, § 1322(b)(2), which allows a debtor to modify the rights of the holder of a secured claim through her plan. However, the Court is not convinced that either of these subsections demands the adoption of the Debtor's argument.

The Court first turns to the holding in *Oglesby*. In *Oglesby*, the debtors filed their bankruptcy petition shortly after their vehicle was repossessed by a pawn lender, but before the expiration of the thirty-day redemption period of O.C.G.A. § 44-14-403(b)(1). The debtors then sought turnover of their vehicle prior to the expiration of the statutory redemption period, arguing that they could repay the pawn loan under their plan in accordance with § 1322. *In re Oglesby*, 2001 WL 34047880, at *1.

The court held that the debtors' bankruptcy estate, created at the commencement of the case under § 541(a), included the debtors' right to redeem their vehicle, but that the filing of the

bankruptcy did not extend the right to redeem except for the sixty days provided under § 108(b). *Id.* at *2-3. Because the debtors in that case had not redeemed their vehicle within the sixty days following the petition date, the court held that the debtors' estate had no interest in the vehicle and denied their request for its turnover. *Id.* at *4.

This Court agrees with the result in *Oglesby*—where collateral securing a creditor's claim is not part of the estate, § 1322 does not entitle a debtor to retain possession of the collateral and treat the creditor's claim as secured under the plan. As stated by the court in *Oglesby*, a contrary holding would impermissibly allow the plan to create rights to the collateral in a debtor or in her estate that did not exist under applicable nonbankruptcy law, in addition to impermissibly suspending the statutory redemption period beyond the extension specifically provided by § 108. *Id.* at *2-3. Further, because the Debtor has conceded her inability to redeem the Vehicle before the expiration of the statutory redemption period (using either her personal property or the property of the estate), there is no reason to distinguish this case from the case law establishing that a Chapter 13 plan cannot be used to revive a debtor's right to redeem pawned property once the statutory redemption period has expired. *See, e.g.*, *Dunlap v. Cash Am. Pawn of Nashville (In re Dunlap)*, 158 B.R. 724, 728 (M.D. Tenn. 1993) (applying similar Tennessee pawn law and stating that "after the redemption period has run, a debtor may not seek to cure or modify the pawn contract under § 1322, because this remedy applies only to goods in which the estate retains an interest"); *USA Title Pawn v. Askew (In re Howard)*, 507 B.R. 394, 399 (Bankr. N.D. Ga. 2014) (stating that § 1322 "cannot be used to restructure the claims of a pawnbroker after the expiration of the redemption period"); *see also Crump v. TitleMax (In re Crump)*, 467 B.R. 532 (Bankr. M.D. Ga. 2010) (arriving at same conclusion where right of redemption expired prepetition).[2]

---

[2] Of course, if the Debtor proposed a plan that paid South Georgia its redemption amount in full on or before the expiration of the redemption period as extended under § 108(b), then the Debtor may be able to use § 1322 to allow her to retain possession of the Vehicle.

The Court finds additional support for its ruling in § 541(b)(8).  This section provides that a vehicle pawned pre-petition is *not* property of a debtor's estate if: (i) the vehicle is in the possession of the pawn lender, (ii) the debtor has no obligation to repay the advanced funds, redeem the vehicle, or repurchase the vehicle at a stipulated price, and (iii) neither the debtor nor trustee has exercised the debtor's state law right of redemption in a timely manner under Georgia law, as may be extended by § 108(b).  It is a fundamental principle of bankruptcy law that a creditor cannot hold a secured claim in the case unless its collateral is property of the estate.[3]

Congress added § 541(b)(8) to the Code as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, sec. 1230, 11 U.S.C. § 541(b)(8), 119 Stat. 23, in which the section adding § 541(b)(8) was titled "PROPERTY NO LONGER SUBJECT TO REDEMPTION."  Thus, Congress, by adding § 541(b)(8) excluding this property from the estate, intended thereby to make clear that property covered by that subsection was "property no longer subject to redemption."  *Maguire v. Comm'r of Internal Revenue*, 313 U.S. 1 (1941) (stating that a section's title in its enacting session law is helpful and legitimate in determining congressional purpose).

Here, each element of § 541(b)(8) is satisfied.  The Vehicle is in the possession of South Georgia.  The pawn transaction does not require the Debtor to repay the advanced funds, redeem the Vehicle, or repurchase the Vehicle at a stipulated price.  While South Georgia was a secured creditor at the time of the hearing, it cannot remain so.  Although the right of redemption, as extended under § 108, had not expired at the time of the hearing, the Debtor concedes she cannot

---

[3] W. Homer Drake Jr., Paul Bonapfel & Adam Goodman, Chapter 13 Practice & Procedure § 14:16 (2d ed. 2014 & Dec. 2014); *see also, e.g.*, *In re Hauter*, No. 10-70234, 2010 WL 4115476, at *1 (Bankr. C.D. Ill. Oct. 18, 2010); *In re Walker*, No. 4:03-BK-17741E, 2003 WL 22794522, at *1 (Bankr. E.D. Ark. Oct. 31, 2003); *In re O'Connor*, 280 B.R. 907, 907 (Bankr. S.D. Ala. 2002); *In re E.P. Fournier Co.*, 225 B.R. 276, 277 (Bankr. D.R.I. 1998); *Magna Bank, N.A. v. Gilsinn (In re Gilsinn)*, 224 B.R. 710, 711 (Bankr. E.D. Mo. 1997); *In re Gabor*, 155 B.R. 391, 392 (Bankr. N.D. W. Va. 1993); *In re Garrison*, 95 B.R. 461, 461 (Bankr. E.D. Ky. 1988); *In re Byrd*, 92 B.R. 238, 239 (Bankr. N.D. Ohio 1988); *In re Elliott*, 64 B.R. 429, 430 (Bankr. W.D. Mo. 1986).

timely exercise it.[4] Because the Debtor's interests in the Vehicle are thus to be extinguished, § 541(b)(8) will act to exclude the Debtor's interest in the Vehicle from the estate. At this point, the Debtor will no longer have any interest in the Vehicle, including the right of possession, and South Georgia will have no collateral upon which it may assert its secured claim in the plan. Therefore, § 541(b)(8), in conjunction with above-mentioned established principles of bankruptcy law, prevents § 1322 from being read to allow the Debtor to keep the Vehicle over the life of the Debtor's Chapter 13 plan.

An Order in accordance with this Opinion will be entered on this date.

[ E N D   O F   D O C U M E N T ]

---

[4] While it appears that the sixty day period ended February 9, 2015 without the Debtor's taking action to redeem the Vehicle, the expiration of this period has not been established by the evidence and was not considered by the Court in its ruling. Rather, the ruling is based upon the Debtor's concession that she is unable to redeem the Vehicle by paying the full amount owed.